[No. 19383. Department One. January 12, 1926.]

Norton's Cafeteria, *Respondent,* v. Ocean Accident & Guarantee Corporation, *Appellant.*[1]

[1] Appeal (264)—Record—Necessity of All the Evidence. Where the evidence is not brought up, the supreme court cannot consider statements in the briefs as to the terms of contracts which were not determined by the findings of fact.

[2] Insurance (143)—Estoppel or Waiver as to Adjustment of Loss. Findings of fact, in an action for a loss on policies of indemnity insurance, that at the time the company authorized a settlement it had in mind only one policy, and that it thereupon stopped payment of the drafts issued in settlement, does not determine that there was no loss and valid claim under both policies, or that the mistake found was as to a material fact or justified stoppage of payment; and other findings showing a loss in excess of the draft, and cancellation of both policies when the draft was given, the findings as a whole justify and sustain a compromise agreement and settlement.

Appeal from a judgment of the superior court for King county, Truax, J., entered February 28, 1925, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Roberts & Skeel,* for appellant.

*Ryan & Desmond, Wesley J. Mifflin,* and *John E. Ryan, Jr.,* for respondent.

Tolman, C. J.—Respondent, as plaintiff, sued in this action to recover $1,145.24 as a balance due, with protest fees, on a sight draft given in settlement of a loss under two policies of insurance. The plaintiff had

[1]Reported in 242 Pac. 37.

judgment below, as demanded, and the defendant has appealed.

No statement of facts is brought to this court, and we are called upon only to determine whether the findings of fact made by the trial court support the judgment. The findings, so far as material, are as follows:

"III.   That on the 3rd day of February, 1924, the plaintiff was the holder and the insured in two certain policies of insurance issued by the above named defendant in the sum of fifteen hundred dollars ($1500) each, and numbered M. S. 36859 and M. J. 10676, which policies are in evidence herein, having been issued concurrently and the period of the risk thereon being from September 1, 1923, to September 1, 1926. That the former is what is ordinarily called a mercantile safe policy and the latter an interior office robbery policy. That the premium upon the interior office robbery policy was $19.23, and upon the mercantile safe policy $38.90, and upon said date both policies were in full force and effect.

"IV.   That on the night of the said 3rd day of February, 1924, there were on duty in the premises of plaintiff covered by said policies two men whose duties were those of watchmen and janitors. That one of the same would have been sufficient to have performed all of the janitor work but two were maintained to afford protection and to guard the premises. That plaintiff's place of business usually was closed for business at nine o'clock P. M., and that such watchmen and janitors would then be in sole charge of the premises until other employees came on duty at six o'clock in the morning.

"V.   That between ten and eleven o'clock P. M., on said date three robbers appeared on the premises, held the said watchmen up at the point of a gun, bound their hands and feet and one of the hold-up men covered them with a gun while the other two blew the safe with nitro-glycerine.

"VI.   That at the time of such hold-up the said watchmen and janitors were eating in the kitchen about

twenty feet from the safe, which was located in the dining room beside the cashier's desk, the rooms being separated by doors. That the said watchmen had no access to the safe and had no knowledge as to the amount of money therein, except that on one occasion the safe was left open when the manager of the plaintiff left the premises and the change sack containing from $150 to $200 was left under the counter. The watchmen found the same, reported to such manager, and under his directions placed such coin sack in the safe.

"VII.  That by reason of the blowing of the safe the same was damaged and cash currency, certain checks and the general contents of the same were removed therefrom by the robbers.

"VIII.  That one C. E. Stevens was at the time and now is the representative of the defendant corporation in the city of Seattle, bearing the title of Claims Attorney, he being a duly licensed lawyer with four or five years experience in adjusting the claims, but he had never before been called upon to adjust a mercantile safe policy. That on the morning following such robbery the plaintiff reported the same to the general agent of the company in Seattle, who in turn reported the same to the said C. E. Stevens, and he forthwith made an investigation of the loss.

"IX.  That at that time the books and records of the plaintiff were gone over and negotiations of the amount of loss followed. Both policies were presented to Mr. Stevens and he read both of the same and knew their contents as did the plaintiff. Negotiations thereupon followed as to the loss, and in addition to the money stolen, plaintiff claimed damage to the safe in the amount of $100 and also asserting a right to recovery on certain checks that were in the safe, in the amount of forty some odd dollars, some of which were payable to cash and upon which there was no ultimate loss except in the sum of $10.00. It was finally agreed that it should be allowed $60 on account of the damage to the safe, and that nothing should be allowed on account of the checks that were lost.

"X.   That the said Stevens had no authority to pay the plaintiff's loss except as he procured it from Mr. Williams, who at the time was manager of the claims department at San Francisco.   When Mr. Stevens reported such loss and wired for authority to pay the matter, he received such authority.   Mr. Williams at the time, overlooked the fact that there were two policies and took into consideration the safe policy only. Before the draft reached San Francisco he discovered his mistake and that there were two policies, one a mercantile safe policy and the other an interior office robbery policy, and upon making such discovery he stopped payment on the draft.

"XI.   That in pursuance to such agreement of settlement, Mr. Stevens drew and delivered to the plaintiff the draft set forth in paragraph V of the complaint herein, and the plaintiff accepted the same in full settlement of its claim, which it endorsed as set forth in paragraph VI of the complaint.   That the draft was in due course and through the regular channels presented and the payment was stopped thereon by the said Williams as heretofore mentioned, and the same went to protest and the plaintiff incurred and was compelled to pay protest fees in the sum of $4.

"XII.   That at the time the said draft was so delivered both of the policies were surrendered to the defendant company, the same were cancelled, credit was allowed the plaintiff for the unearned premium, and the plaintiff executed a full release, and neither such policies nor the said release have ever been returned to it.

"XIII.   That thereafter, after negotiations between the parties, the said Stevens representing the defendant, defendant admitting its liability in the sum of fifteen hundred dollars ($1500), the face of said safe policy, and it was agreed that the plaintiff would accept the $1500, which was paid without prejudice to any rights it might have to recover the balance claimed to be due and without prejudice to the defendant's rights to defend as to such claim, and the balance so asserted and claimed by the plaintiff, and no portion thereof has ever been paid  .  .  ."

[1] A considerable part of appellant's briefs and argument is devoted to telling us the terms of the two policies mentioned in the findings, and drawing conclusions from such terms; but, unfortunately, the trial court, as we read the findings, did not determine the terms of either policy. The policies are not here and we cannot, if we would, accept appellant's argument as evidence in the case.

[2] Appellant's chief reliance is placed upon finding numbered 10, in which the court finds that the officer of the appellant company in San Francisco, at the time he wired authority to the local representatives to issue the draft in full settlement under both policies, had in mind the safe policy only; and that, when he ascertained that there were two policies—a mercantile safe policy and an interior office robbery policy—he stopped payment on the draft. But that finding does not, in any manner or to any degree, determine that there was not a loss and a valid claim under both policies. Lacking that element in the finding, how can we say that the mistake found by the court was as to a material fact, or that stoppage of payment on the draft was justifiable? Moreover, taking the findings as a whole, it clearly appears that claims of loss were advanced in excess of the amount finally agreed upon and represented by the draft, and that both policies were surrendered and cancelled when the draft was given. So that it clearly appears from the findings that there were matters in dispute which would justify and sustain a compromise agreement and settlement, and that this was such a settlement.

The findings support the judgment, and it must be, and is, affirmed.

HOLCOMB, ASKREN, FULLERTON, and MITCHELL, JJ., concur.